IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRVING G. HUMPHREY,<br><br>        Plaintiff,<br><br>    vs.<br><br>JAMES YATES,<br><br>        Defendant. | Case No. 1:09-cv-000075 LJO JLT (PC)<br><br>FINDINGS AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(Doc. 53) |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's sole remaining claim is that Defendant was deliberately indifferent to his serious medical need as demonstrated by his failure to grant his transfer to a different prison.

On April 28, 2011, Defendant filed the instant motion for summary judgment. (Doc. 53) Plaintiff filed his opposition to the motion on July 7, 2011 (Doc. 57) and Defendant replied on August 15, 2011. (Doc. 60) For the reasons set forth below, the Court recommends that motion for summary judgment be **GRANTED**.

**I.    BACKGROUND**

**A.    Factual Background**

Valley Fever is a disease that is endemic to the central valley area of California. (Ex A to

Igbinosa Dec at 1) It is caused by inhaling naturally occurring coccidioidomycosis fungus. Facts[1] 11, 12. In the majority of cases, the illness causes no symptoms and requires no treatment. Fact 14. In a minority of cases, patients require medication and in rare cases, the illness causes severe symptoms, including death. Facts 14-15. Once a person contracts Valley Fever, usually he gains a lifetime immunity to the fungus. (Igbinosa Dec at 6)   Only in extremely rare cases, if ever, can a person be reinfected by the disease. Id. Once infected, the disease can lie dormant before symptoms appear, if they ever do. Id. In other cases, after the symptoms have resolved, the disease may be "reactivated" and cause a reappearance of symptoms. Id. Additional or continued exposure to the fungus does not cause reactivation of the symptoms. Id.

In 2006, the CDCR began taking steps to exclude certain inmates susceptible to the disease from the endemic area, which includes Pleasant Valley State Prison ("PVSP"). (Ex A to Igbinosa Dec at 1; Fact 17-20) The inmates determined to be susceptible included certain HIV-positive inmates, inmates with a history of lymphoma, those who had undergone an organ transplant, those with chronic immuno therapy, chronic lung disease requiring oxygen and cancer patients undergoing chemotherapy. Fact 18.

In late 2007, the CDCR revised and expanded this policy to exclude inmates from the endemic area who met the criteria established in the 2006 policy or had been diagnosed with HIV no matter the inmate's T-cell count and those who had moderate to severe COPD requiring intermittent or continuous oxygen. Fact 22. On the other hand, the 2007 policy memo further instructed that, "***It is not necessary to transfer inmate-patients that already have been infected by cocci.***" Ex B to Igbinosa Dec, emphasis in the original; Fact 30.

Plaintiff was transferred to PVSP in 2003. Fact 2. Years before his transfer, he had undergone a surgery to remove the lower lobe of his right lung to treat his lung cancer. (Plaintiff Dec at 2) Plaintiff asserts that as a result of this lobectomy and since that time, he has suffered breathing difficulties. Id.

In 2005, Plaintiff was diagnosed with Valley Fever. Fact 4. Plaintiff's flu-like symptoms that he first suffered became more severe over time. (Plaintiff Dec at 4) His breathing became so labored and his condition so serious, that he was transferred to the emergency room at PVSP. Id. He was treated with medication and "a host of inhalers." Id. Plaintiff reported that, though he recovered from the

---

[1] The Court refers to the Statement of Undisputed Facts as "Fact" followed by the pertinent fact number.

illness, he continued to suffer labored breathing and believes he may have suffered other, long-term effects. Id. at 5. In mid-2007, Plaintiff suffered a recurrence of Valley Fever symptoms. Fact 5; Plaintiff Dec at 6. At that time and apparently one or more time since, Plaintiff filed a grievance and sought transfer to a prison outside of the endemic area. Plaintiff Dec at 6; Ex A to Blonien Dec at 22-23. This request was denied. Id. It is without dispute that Plaintiff has none of the conditions outlined in the 2006 or 2007 CDCR policy memoranda that required his transfer away from the endemic area. Fact 6; Ex A to Blonien Dec at 23-24.

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute regarding a material fact is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party. Id.

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id. (citing Celotex, 477 U.S. at 323).

If the movant has sustained its burden, the nonmoving party must "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." FTC v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (citing Anderson, 477 U.S. at 257 (1986)) (emphasis in

the original). Although the nonmoving party need not establish a material issue of fact conclusively in its favor, it may not simply rely on "bald assertions or a mere scintilla of evidence in [its] favor" to withstand summary judgment. Stefanchik, 559 F.3d at 929. Indeed, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citation omitted).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." Soremekun, 509 F.3d at 984. Rather, "the evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 255. See T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987). Inferences, however, are not drawn out of the air; it is the nonmoving party's obligation to produce a factual predicate from which the inference may justifiably be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

**III.   DISCUSSION**

    **A.   Eighth Amendment**

Plaintiff may proceed under 42 U.S.C. § 1983 against a person acting under color of state law who has violated rights guaranteed by the United States Constitution. Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995); Demery v. Kupperman, 735 F.2d 1139, 1146 (9th Cir. 1984). To prevail on such a claim, Plaintiff must prove that he suffered a specific injury as a result of Defendant's specific conduct. See Rizzo v. Goode, 423 U.S. 362, 371-372 (1976).

Deliberate indifference to a serious medical need violates the Eighth Amendment's proscription against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97 (1976); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). "In the Ninth Circuit, the test for deliberate indifference consists of two parts." Jett, 439 F.3d at 1096. First, the plaintiff must show a serious medical need by demonstrating that failure to treat the prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Jett, 439 F.3d at 1096; McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992), overruled in part on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). "Second, the plaintiff must show the defendant's response to the need

1  was deliberately indifferent." Jett, 439 F.3d at 1096. A prison official is "deliberately indifferent" if he
2  actually knows that a prisoner faces a substantial risk of serious harm and disregards that risk. Farmer
3  v. Brennan, 511 U.S. 825, 837 (1994). In other words, the second prong is satisfied by the plaintiff
4  showing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b)
5  harm caused by the indifference." Jett, 439 F.3d at 1096.

6        "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th
7  Cir. 2004). It requires "more than ordinary lack of due care for the prisoner's interests or safety."
8  Farmer, 511 U.S. at 835, (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). The requisite state of
9  mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the
10 other." Id. at 836. It may be shown by "the way in which prison physicians provide medical care."
11 McGuckin, 974 F.2d at 1062 (9th Cir. 1992). Prison officials demonstrate "deliberate indifference"
12 when they are aware of the patient's condition but "deny, delay or intentionally interfere with medical
13 treatment." Jett, 439 F.3d at 1096.

14       Analysis

15       Plaintiff asserts that the failure to transfer him from PVSP constitutes deliberate indifference by
16 Warden Yates, the only defendant here, to his serious medical need. Assuming without deciding that
17 Plaintiff has a serious medical need, there is no evidence that Defendant has been deliberately indifferent
18 to that need.

19       It is notable that there is no evidence that Plaintiff was "reinfected" by the disease rather than
20 merely suffering a recurrence of the symptoms. (Plaintiff Dec at 6, 7, 9) In fact, Plaintiff admits that
21 the recurrence of the symptoms may have been caused by a relapse. Id. Moreover, the admissible
22 evidence demonstrates that once a person is infected with the Valley Fever fungus, symptoms of the
23 disease may recur in the future. Fact 30. There is no evidence that continued or additional exposure to
24 the fungus causes a recurrence of symptoms. Id. In fact, the November 2007 CDCR policy memo,
25 specifically instructs local prison officials that "***It is not necessary to transfer inmate-patients that***
26 ***already have been infected by cocci.***" Ex B to Igbinosa Dec, emphasis in the original. Id. Instead, once
27 a person is infected, he bears the risk of recurrence of his symptoms into the future. Id. Thus, the failure
28 to grant Plaintiff's request for a transfer bears no connection to the risk that the Valley Fever will recur.

As a result, the Court cannot decide that the failure to transfer Plaintiff away from PVSP constituted deliberate indifference by Yates.

On the other hand, the evidence demonstrates that the CDCR policies related to housing of inmates within the endemic area, were not created by Defendant. (Exs A, B to the Ignibosa Dec) Both were issued by the CDCR headquarters and there is no evidence that Defendant contributed in any way to their development. Id. Plaintiff admits that he has no evidence that Defendant was even aware of Plaintiff's situation, let alone that he played any role in it. (Ex A to Blonien Dec at 46) Instead, he bases his theory of liability on the fact that "He's in charge of the prison." Id. This is insufficient.

For liability to be imposed here, there must be an actual causal link between the actions of the Defendant and the alleged unconstitutional action. Monell v. Department of Social Services, 436 U.S. 658, 691-692 (1978). Defendant must have had "direct personal participation in the deprivation" or "set[] in motion a series of acts by others which the actor [knew] or reasonably should [have known] would cause others to inflict the constitutional injury." Johnson v. Duffy, 588 F.2d 740, 743-744 (9th Cir. 1978).

On the other hand, assuming Plaintiff is alleging that Defendant should be held liable for the actions of his subordinates who denied the transfer request, this theory is equally unavailing. There is no respondeat superior liability under 42 U.S.C. § 1983. Palmer v. Sanderson, 9 F.3d 1433, 1437-38 (9th Cir. 1993); Monell, 436 U.S. at 691 (the supervisor of someone who allegedly violated a plaintiff's constitutional rights is not made liable for the violation by virtue of that role). "Liability under § 1983 arises only upon a showing of personal participation by the defendant. (Citation.) A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under § 1983." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989), citation omitted. Thus, because Plaintiff does not present any evidence–and, in fact, does not even contend–that Defendant had any personal role in the alleged deprivation, that he condoned it or was even aware of it, the Court finds that Defendant Yates is entitled to summary judgment.

**IV.   CONCLUSION**

For all the reasons set forth above, it is **HEREBY RECOMMENDED** that:

1. Defendant's April 28, 2011, motion for summary judgment (Doc. 53) be **GRANTED**.
2. The Clerk of the Court enter judgment and close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 29, 2011**                                          /s/ Jennifer L. Thurston
                                                                         UNITED STATES MAGISTRATE JUDGE